UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CUCS UNLIMITED CONTRACTING SERVICES, INC., <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> COMDATA INC., <br><br> Defendant/Counter-Plaintiff. | Case No. 3:17-cv-01158 <br><br> Judge Eli J. Richardson <br> Magistrate Judge Alistair E. Newbern |

## **MEMORANDUM AND ORDER**

Plaintiff/Counter-Defendant CUCS Unlimited Contracting Services, Inc. (CUCS), a company whose technicians drive to various locations to install cable, contracted with Defendant/Counter-Plaintiff Comdata Inc. (Comdata) to implement a fuel card system in which CUCS would control how much it paid each technician for fuel by providing them with pre-loaded Master Card Corporate Cards. (Doc. No. 14, PageID# 64–65.) Through Comdata's web-based system, CUCS sought to establish a weekly budget for fuel spending on each card. After the system had been running for about a year, and over 700 such cards issued, CUCS discovered that what it thought was a weekly budget for each card had actually been made a daily budget, such that "if [CUCS] thought it was granting an employee the right to spend $80 in gas for the week, the technician was able to spend $80 per day - or a total of $560 for the week." (*Id.* at PageID# 67, ¶¶ 15, 18.) CUCS alleges that it suffered over $195,000 in damages before the error was corrected and has sued Comdata for breach of contract and warranty, fraud, conversion, and unjust enrichment. (*Id.* at PageID# 67–74.) Comdata has filed a counterclaim requesting a declaratory

judgment that it did not breach the contract and seeking to enforce its terms. (Doc. No. 27, PageID# 137–38.)

After receiving permission from the Court (Doc. No. 43), Comdata moved to compel disclosure and production of information and documents to remedy various deficiencies in CUCS' responses to Comdata's interrogatories and production requests, and seeks the attorney fees it incurred in filing the motion to compel. (Doc. No. 44.) CUCS responded in opposition (Doc. No. 46) and Comdata filed a reply (Doc. No. 49). In subsequent filings, Comdata and CUCS notified the Court of their continued discussions regarding the motion to compel and raised additional discovery issues. (Doc. Nos. 66, 68, 69, 70.)

The Magistrate Judge held a telephonic conference with the parties on January 18, 2019, regarding their remaining discovery issues. After that conference, the Court ordered CUCS to supplement its discovery by January 25, 2019. The Court also found Comdata's motion to compel moot in light of the additional production. (Doc. No. 72.) In a second telephone conference held on January 30, 2019, the Court found that discovery issues raised by Comdata in its motion to compel and subsequent filings had not been adequately addressed by CUCS' additional production. The Court therefore AMENDS its prior order finding the motion to compel moot and addresses the remaining issues by this order.

For the reasons that follow, Comdata's motion to compel is GRANTED IN PART, as set out below. Issues not addressed by this order have been resolved by the parties, and the motion to compel is FOUND MOOT IN PART as to those claims.

I. Relevant Background

In a pre-litigation email to Comdata, CUCS laid out two different ways to calculate the damages caused by the alleged error in implementing the fuel card program:

> The first way is to take the weekly total limit amount we told you to apply to all cards and compare it to the weekly total actually spent on the cards. (See attached). This is a rather easy calculation. Under this calculation, our reimbursable damages are $190,331.87. (Note, under this damage calculation, damages are artificially lowered in every case where a tech did not spend up to their limit).
>
> There is a second and more accurate, although more time consuming way, to calculate damages. And that way is to compare the limit and the amount charged on a tech by tech basis (and thereby eliminate techs who artificially lower the damages). Because of the length of time involved, we did a sample analysis for week ending 7/17/16. Here's the comparison. Under the gross method described above, damages for this week are $4,535.49. However, under this second, more accurate method, the damages are $5,793.22. We would expect a similar result for all other weeks at issue.

(Doc. No. 44-1, PageID# 217.) Attached to that email is a spreadsheet entitled "Comdata Damages," which seems to outline how CUCS reached the $190,331.87 figure associated with the first approach. (Doc. No. 44-1, PageID# 226.) The spreadsheet lists the "CUI Limit Amount," or the amount that CUCS budgeted, for each week from March 20, 2016 through March 12, 2017. (*Id.*) The sum of those amounts is listed as $478,465.98. (*Id.*) When that amount is subtracted from what CUCS allegedly paid on the cards over the same period—$668,797.85—the result is $190,331.87. (*Id.*)

In its first amended complaint, CUCS does not reference either of the above methods for calculating damages. Instead, CUCS states that "[t]he difference between a *weekly* 'fuel only' limit versus a *daily*' fuel only' limit has caused [CUCS] extensive out-of-pocket monetary damages for the overages paid, loss of personnel and retraining." (Doc. No. 14, PageID# 67, ¶ 17 (emphasis in original).) CUCS alleges that it "incurred monetary damages in an approximate amount over $195,000." (*Id.* at PageID# 68, ¶ 22.)

Comdata complains that, despite CUCS' pre-litigation reference to different methods for calculating its damages, and its approximation, in the amended complaint, of the damages it suffered, CUCS' initial disclosure concerning damages is barren, and simply lists specific

3

categories of damages. (Doc. No. 44-2, PageID# 230.) Comdata argues that CUCS' failure to estimate the damages associated with each category, and provide the documents underlying such estimation, amounts to a violation of its disclosure obligation under Rule 26(a)(1)(A)(iii), and asks the Court to compel proper disclosure. (Doc. No. 45, PageID# 335.) CUCS responds that it provided the information that was reasonably available to it at the time. (Doc. No. 46, PageID# 358.)

Comdata also asks the Court to compel responses to interrogatories and document production requests it issued in an effort to get CUCS to clarify the nature of its claims for damages. CUCS answered the interrogatories by pointing to a document it had produced entitled "Compilation of Damages." (Doc. No. 45, PageID# 337, 340, 342–43, 346–48.) In response to the document production requests, CUCS claimed that it had produced all relevant documents. (Doc. No. 45, PageID# 351.) In a written letter and then a follow-up email, Comdata explained to CUCS that a document entitled "Compilation of Damages" had not been produced and that Comdata had never received any documents related to CUCS' calculation of its damages. (Doc. No. 44-7, PageID# 311–13; Doc. No. 44-10, PageID# 325.) Despite having previously claimed that a damages compilation document would be produced, CUCS asserted, in a July 12, 2018 response to Comdata's follow-up email, that, at that time, "[CUCS] [did] not have any documents to produce relative to the damages compilation." (Doc. No. 44-10, PageID# 325.) That changed on August 13, 2018, when CUCS produced, in support of its response in opposition to Comdata's motion to compel, a document approximating the damages associated with rehiring/training new personnel. (Doc. No. 46-10, PageID# 593.) CUCS argues that Comdata's motion should be denied because CUCS has responded to Comdata's interrogatories to the best of its ability and "produced all

4

relevant documents . . . in [its] possession and control that are not otherwise in the custody and control of [Comdata]." (Doc. No. 46, PageID# 358.)

Comdata argues that the deficiencies in CUCS' discovery responses extend beyond the issue of damages. Three of Comdata's interrogatories ask CUCS to identify the portions of the written contract between the parties that support CUCS' claim that Comdata breached it. (Doc. No. 45, PageID# 336, 339, 344.) CUCS objected to those interrogatories on the ground that they call for a legal conclusion, which Comdata disputes. (*Id.* at PageID# 336–37, 339–40, 344–45.) Comdata also points out that CUCS did not provide verification of its interrogatory responses, in violation of Rule 33(b), which CUCS does not deny. (*Id.* at PageID# 352.) Finally, Comdata claims that, despite CUCS' assertion to the contrary, it failed to produce documents responsive to various production requests. (*Id.* at PageID# 351.) Comdata asks the Court to compel (1) complete and verified responses to its interrogatories and (2) responses to production requests that reference the Bates Numbers of responsive documents, or directly assert that no responsive documents are available. (*Id.* at PageID# 351–52.) Comdata also asks the Court to award Comdata the reasonable expenses, including attorney's fees, it incurred in seeking proper disclosures and discovery responses. (*Id.* at PageID# 353; Doc. No. 46.) CUCS does not respond to that argument, although it does claim that Comdata's motion to compel is "premature and inappropriate" and that CUCS declined to file one despite Comdata's alleged discovery violations.[1] (Doc. No. 46, PageID# 355–57 ¶¶ 3, 7.)

---

[1] CUCS states that it issued interrogatories and requests for production when this action was filed in state court in July of 2017. (Doc. No. 46, PageID# 354.) Comdata removed the case to this Court, "but did not respond to [CUCS'] discovery until March 26, 2018, and produced only 31 pages." (*Id.*) Comdata explains the delay by pointing out that "discovery was stayed until the [February 8, 2018] initial case management conference" and argues that CUCS never raised any of the alleged deficiencies in Comdata's discovery responses with the Court. (Doc. No. 49, PageID# 600 (citing Doc. No. 4).) The Court finds that any dispute about the adequacy of

5

## II. Legal Standard

The scope of discovery is "within the sound discretion of the trial court[.]" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008). Generally, Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b). Relevant evidence in this context is that which "has any tendency to make a fact more or less probable than it would be without the evidence" if "the fact is of consequence in determining the action." *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-2267, ___ F.Supp.3d ___, 2018 WL 3632136, at *2 (M.D. Tenn. July 31, 2018) (quoting Federal Rule of Evidence 401).

A motion to compel discovery may be filed in a number of circumstances, including when a party fails to "make a disclosure required by Rule 26(a)," "answer an interrogatory submitted under Rule 33," or "produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(A), (a)(3)(B)(iii)–(iv). Answers to interrogatories must be made in writing under oath and signed by the person providing them. Fed. R. Civ. P. 33(b)(3), (b)(5). "[A]n evasive or incomplete disclosure, answer, or response" is considered a "failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The court will only grant [a motion to compel], however, if the movant actually has a right to the discovery requested." *Grae*, 2018 WL 3632136 at *2. When a motion to compel is granted, or if the disclosure or requested discovery is provided after the motion was filed, the Court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's

---

Comdata's discovery responses has not been properly raised and, in any event, is not relevant to the pending motion. *See Alutiiq Int'l Sols., LLC v. Lyon*, No. 2:11-CV-01104-GMN, 2012 WL 4155081, at *2 (D. Nev. Sept. 19, 2012) (stating that it is generally "not a defense to a motion to compel discovery to argue that an opposing party has been equally (or more) non-compliant in its discovery obligations").

reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. § 37(a)(5)(A). However, the Court cannot order such payment if (1) the movant did not confer in good faith with the targeted party prior to filing the motion, (2) the targeted party's nondisclosure or failure to respond was substantially justified, or (3) awarding the payment would otherwise be unjust. Fed. R. Civ. P. 37(a)(5)(A)(i–iii).

Rule 26 requires a party seeking damages to provide, in an initial disclosure, "a computation of each category of damages claimed" and, unless privileged, "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). This is the "functional equivalent of a standing Request for Production under Rule 34." *Bridgestone Americas, Inc. v. Int'l Business Machines Corp.*, No. 3:07-CV-157, 2016 WL 3211226, at *3 (M.D. Tenn. Jan. 12, 2016); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295–96 (2d Cir. 2006). "A party making a claim for damages has the obligation to disclose 'the best information then available to it concerning that claim, however limited and potentially changing it may be.'" *Hesco Parts, LLC v. Ford Motor Co.*, Case No. 3:02-CV-736, 2007 WL 2407255, *1 (W.D. Ky. Aug. 20, 2007). That information must be sufficient to support an "exact" damages calculation. *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 368 (6th Cir. 2010) (finding, in this context, that "simplicity and efficiency are virtues only if [the information provided] conveyed all of the necessary information" to support the damages calculation) (internal quotations omitted). A disclosing party's failure to develop a basis for a damages calculation through investigation does not exempt the party from its Rule 26 disclosure obligations. *Bridgestone Americas, Inc.*, 2016 WL 3211226, at *3.

Under Rule 37(c)(1), a party who fails to provide information as required by Rule 26(a) "is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). However, upon motion and after giving an opportunity to be heard, the Court may replace or supplement that sanction with others, including ordering "payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A).

## III.   Analysis

As a threshold matter, CUCS' claim that Comdata's motion to compel is "premature and inappropriate" is unpersuasive. (Doc. No. 46, PageID# 357.) After holding a fruitless phone conference with the parties regarding their discovery differences, the Court gave Comdata permission to file the present motion to compel, undermining CUCS' characterization of it. (Doc. No. 43.) Further, CUCS' assurance that it "intends to fully comply" with its "duty to supplement any and all discovery responses as [] new evidence is obtained and/or at the latest thirty days from the date of the discovery cutoff" is belied by what has transpired in subsequent telephone conferences. (Doc. No. 46, PageID# 357–58.) The Court therefore addresses the remaining issues raised by Comdata's motion to compel as follows.

### A.  Interrogatories Nos. 6, 18, and 26

Several of Comdata's interrogatories ask about the written agreement[2] that the parties entered into:

> **Interrogatory No. 6:** Identify in the Agreement where it states that Comdata agreed to provide the CUI Fuel Card Program on a weekly "fuel only" limit.

---

[2]   Comdata defines "Agreement" as "that certain *Comdata MasterCard Corporate Card Agreement* referenced by [CUCS] as being attached as Exhibit A to the Complaint and filed under seal by Comdata in support of its Answer." (Doc. No. 44-5, PageID# 242, ¶ 12 (emphasis in original).)

8

**Interrogatory No. 18:** Identify what specific term of the Agreement Comdata breached as a result of the allegations asserted by you in Paragraph 16[3] of the Complaint.

**Interrogatory No. 26:** What specific term(s) in the Agreement do you allege Comdata breached as part of your Complaint.

(Doc. No. 44-5, PageID# 244, 249, 252.) CUCS objected to each of those interrogatories on the ground that they called for a "legal conclusion" and "without waiving" that objection, referenced other interrogatory responses. (Doc. No. 44-6, PageID# 284, 291, 294.) Yet none of CUCS' other interrogatory responses identifies any terms of the written agreement between the parties as being at issue in this lawsuit. However, CUCS' response to Comdata's third interrogatory does shed some light on the nature of its breach of contract claim:

> 3. In paragraph 7 of your Complaint, you allege that Comdata represented to you that "they had a fuel card program that would allow [CUCS] to establish a weekly limit for each card issued (the "CUI Fuel Card Program")". Identify the specific name of each individual who made this representation to you, the date of said communication, whether said communication was in writing or made orally, the parties to said communication, a detailed description of the content of each identified communication, and all documents evidencing such communication. If there are no documents supporting the identified communication, affirmatively state as such.
>
> **Response:**
> There were numerous conversations between Jason Elrod, Hayley Cleckler, Faye Waters and Villita Ellis where Waters and Ellis stated that [Comdata] had a fuel card program that would allow [CUCS] to establish a weekly limit for each card issued.
> In addition, there was a conference call on February 8, 2016 with Elrod, Cleckler, Joseph Miller (President), Waters, and Ellis where Waters and Ellis stated that defendant had a fuel card program that would allow [CUCS] to establish a weekly limit for each card issued. This call was placed to explain to Joey Miller the procedure that Comdata would implement for CUI before Mr. Miller agreed to sign

---

[3] That paragraph reads: "[Comdata] wrongfully implemented, monitored and maintained the Fuel Cards on a *daily* limit, which was in breach of the Agreement and their representations to [CUCS]." (Doc. No. 14, PageID# 67, ¶ 16.)

9

the agreement. (See Email 14 attached as response to [CUCS'] Response to [Comdata's] Request for Production of Documents).

In addition, there was a webinar that Faye Waters administered with the CUI team on 2/18/2016 that demonstrated specifically how we needed to update and process individual cards.

In addition, there was written correspondence vial email from Faye Waters to Jason Elrod on 1/28/16 – 2/18/16 explaining that Comdata Setup Template proposal to CUI to be completed on a weekly basis. (*See* Email # 1 attached as response to [Communication's] Responses to [Comdata's] Request for Production of Documents.)

In addition, [Comdata] created a Setup Template that only allowed [CUCS] to choose a weekly or monthly reset (See Email #1 and Response Number 5 below).

In addition, a Comdata Setup Template was completed by Hayley Cleckler & Jason Elrod for each profile "CUI Office Location" that identifies each Cycle Limit Reset to be set to "Weekly". These templates were emailed to Faye Waters & Villita Ellis. *See* Emails 2 – 8 attached as responses to [CUCS'] Responses to [Comdata's] Request for Production of Documents.

(Doc. No. 44-6, PageID# 281–82.)

Whether CUCS' breach of contract claim is based at all on the written agreement between the parties is relevant to resolution of that claim, and CUCS' reference to the written agreement in its complaint suggests that the content of that agreement is at issue: "It was the responsibility and fiduciary duty of [Comdata] to implement [CUCS] needs *as agreed in the Agreement* and representations associated therewith." (Doc. No. 14, PageID# 66, ¶ 13.) The question is thus whether CUCS' objections to the interrogatories relating to the written agreement are proper. Comdata argues that they are not because its "inquiry directly relates to an allegation made by CUCS in its lawsuit about the contract between the parties" and "does not ask for a legal conclusion." (Doc. No. 45, PageID# 337.) CUCS does not respond to that argument. (Doc. No. 46.)

Rule 33(a)(2) states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ." Fed. R. Civ. P. 33(a)(2). An interrogatory concerning the application of law to fact "can be most useful in

10

narrowing and sharpening the issues, which is a major purpose of discovery." Fed. R. Civ. P. 33 advisory committee's note to 1970 amendment. An interrogatory raising a purely legal question—that is, one that is "unrelated to the facts of the case"—does nothing to clarify the issues and exceeds the scope of Rule 33. *Id.* The Court may be best situated to resolve a dispute about whether an interrogatory involves a mixed question of law and fact, or a purely legal question, after discovery is completed, and therefore can defer ruling on such a dispute when appropriate. Fed. R. Civ. P. 33(a)(2).

Because Comdata's interrogatories concerning the written agreement between the parties do not raise purely legal issues, CUCS' objections are overruled. CUCS offers no argument to support its objection and the Court finds no basis for concluding that the interrogatories at issue are unrelated to the facts of this case. On the contrary, each interrogatory focuses on the written agreement between the parties and asks CUCS to identify the provisions of it, if any, that are at issue. Further, since Rule 33 was amended in 1970, courts have overruled objections to interrogatories asking the responding party to interpret contracts or identify the terms at issue. *See Brighton Crossing Condo. Ass'n v. Am. Family Mut. Ins. Co.*, No. 15-00887-CV-W-FJG, 2016 WL 4618897, at *3 (W.D. Mo. Sept. 6, 2016) (overruling objection to an interrogatory that asked the responding party to locate support for its position in the written contract); *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, No. 6:14-CV-749-ORL-41, 2015 WL 1470971, at *7 (M.D. Fla. Mar. 31, 2015) (overruling objection to interrogatories that asked Nationwide "to apply contract law to the facts of the case"); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 119 (N.D. Ga. 1972) (overruling an objection to an interrogatory that sought "to elicit an opinion as to the meaning of contract terms," noting that requests for opinions concerning the application of law to fact are permissible in the wake of the 1970 amendment); *see also Sigmund v. Starwood*

*Urban Retail* VI, LLC, 236 F.R.D. 43, 46 (D.D.C. 2006) (observing, in the context of analyzing the scope of admissions under Rule 36, which contains language similar to that of Rule 33, that "[a] request for admission that relates to the interpretation of a contract at issue in a case involves the application of law to the unique facts of that case and, therefore, would be permissible under the amended Rule 36"). CUCS must provide complete responses to these interrogatories.

CUCS must also provide verified responses to all of its interrogatories. In its motion to compel, Comdata states that CUCS failed to do so despite Comdata's repeated requests. (Doc. No. 45, PageID# 352.) CUCS does not respond to this argument. Under Rule 33, answers to interrogatories must be made in writing under oath and signed by the person providing them. Fed. R. Civ. P. 33(b)(3), (b)(5). CUCS shall provide compliant responses by February 14, 2019.

### B. Miscellaneous Issues With CUCS' Responses to Production Requests

Comdata objects to CUCS' responses to the following document production requests:

**Request for Production No. 3:** Produce copies of all diaries, calendars, daily planners, notes, appointment books and the like that you maintained from January 1, 2016 through July 1, 2017 that contain information pertaining to (a) the allegations asserted in your Complaint; (b) the denials and defenses asserted in the Answer to the Complaint; and (c) CUCS you had with agents acting on behalf of the Defendant.

**Request for Production No. 13:** Produce copies of all documents, including prior drafts and/or redlines, related to the Agreement, regardless of whether you and/or your agent prepared said documents.

**Request for Production No. 14:** Produce copies of all notes in your possession created contemporaneously with any CUCS you had with Comdata since July 1, 2017.

**Request for Production No. 15:** Produce call logs or similar information in your possession related to CUCS you had with Comdata from January 1, 2016 through and including May 1, 2017.

**Request for Production No. 21:** Produce copies of all written or recorded witness statements in your possession pertaining to the allegations asserted in your

Complaint and/or the denials and defenses asserted by Comdata in its Answer to the Complaint.

**Request for Production No. 38:** Produce copies of all documents evidencing your policies and procedures related to the CUI Fuel Car Program, as they existed as of February 1, 2016, to the present.

(Doc. No. 44-5, PageID# 260–62, 267.) CUCS responded to those requests by stating that it had "attached hereto and incorporated herein all documents which relate" to them. (Doc. No. 44-6, PageID# 300, 302–04, 308.) Comdata disputes that, arguing that no responsive documents were produced. (Doc. No. 45, PageID# 351.) Comdata claims that the requested discovery is relevant as it "speak[s] to claims and potential defenses raised in this dispute . . . ." (*Id.*) Comdata requests that CUCS produce responsive records, if they exist, or state affirmatively that no such records exist. (*Id.* at PageID# 351—52.) Further, Comdata requests that, if CUCS has produced relevant documents, it identify them. (*Id.* at PageID# 352.) CUCS concedes the relevance of Comdata's production requests, but reiterates that it has produced all responsive documents.[4] (Doc. No. 46, PageID# 358.)

CUCS' one-sentence response to the above requests for production is inadequate given the current state of its production efforts. Comdata is right to argue that the 172 pages of Bates stamped documents that CUCS has produced are not evidently responsive to Comdata's requests. As an example, there are no "diaries, calendars, daily planners, notes, appointment books" or similar materials among the documents that CUCS produced. (Doc. No. 44-6, PageID# 300, ¶ 3.) Nor are

---

[4] CUCS also references Federal Rule of Procedure 36, stating that "a party may admit or deny a request, but detailed reasons must be presented only if a party objects to a request or contends that the request cannot truthfully be admitted or denied." (Doc. No. 46, PageID# 358.) CUCS then claims that "[n]either of these scenarios exist" in this case, and that it "did not arbitrarily object to any of the discovery requests." (*Id.*) It is not clear why CUCS references Rule 36, which governs admissions, as the pending motion does not concern CUCS' responses to admissions, or even mention admissions.

there any documents "evidencing [CUCS'] policies and procedures" relating to the fuel card program. (*Id.* at PageID# 308, ¶ 38.)

It is CUCS' "responsibility to provide meaningful responses to [Comdata's] requests for production," and it is CUCS' responsibility to review its documents "to identify those that are responsive to specific requests." *Orchestratehr, Inc.*, 178 F. Supp. 3d at 510. CUCS must produce records responsive to the above requests if they exist. To the extent that CUCS believes it has already produced responsive records, it must provide the relevant Bates numbers. *See id.* at 509–10 (requiring the defendants to provide the Bates numbers of responsive documents after the defendants had referenced hundreds of pages of seemingly irrelevant documents in response to plaintiffs' production requests); *Kincade v. Allstate Ins. Co.*, No. 4:13-CV-00126-KGB, 2014 WL 11498051, at *2 (E.D. Ark. July 15, 2014) (holding that reproduction of responsive records was not required so long as Allstate could sufficiently identify the responsive records it had produced); *Alutiiq Int'l Sols., LLC v. Lyon*, No. 2:11-CV-01104-GMN, 2012 WL 4155081, at *3 (D. Nev. Sept. 19, 2012) (requiring the plaintiff to specify which of the 253 pages of documents it had produced were responsive to defendant's production requests). If no records responsive to a given request exist, CUCS must say so. *See Graves v. Standard Ins. Co.*, No. 3:14-CV-558-DJH, 2015 WL 13714170, at *3 (W.D. Ky. Oct. 20, 2015) (requiring the responding party to cite to specific responsive documents or "acknowledge that no such [documents] exist[]"). CUCS must provide responses and document production as just outlined by February 14, 2019.

### C. Comdata's Request for Reasonable Expenses, Including Attorney's Fees

Comdata asks the Court to award it the "reasonable expenses, including attorney's fees incurred in seeking full and complete discovery responses from [CUCS], should its motion to compel be granted." (Doc. No. 45, PageID# 352.) Comdata rightly points out that Rule 37(a)(5)(A)

provides for the relief it has requested: "[i]f the motion [to compel] is granted . . . the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

An award of the reasonable expenses that Comdata incurred in seeking disclosures from CUCS that comply with Rule 26(a) would be consistent with Rule 37(c)(1). That rule states that, when a party fails to comply with its Rule 26(a) initial disclosure obligations, as CUCS did here, the Court must impose an appropriate sanction, which might be an order requiring "payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. (c)(1)(A).

Because CUCS does not respond to Comdata's request for reasonable expenses, it is difficult for the Court to determine whether that sanction is appropriate under Rule 37(a)(5)(A) or Rule 37(c)(1). CUCS is ordered to show cause why the Court should not award Comdata the relief it has requested by February 28, 2019.

## IV. Conclusion

For the foregoing reasons, Comdata's motion to compel discovery (Doc. No. 44) is GRANTED.

CUCS is ORDERED to produce initial disclosures and responses to Comdata's interrogatories and production requests as outlined above by February 14, 2019.

CUCS has asserted in discovery telephone conferences that it does not have responsive documents to some of Comdata's requests or plans not to seek the damages to which those requests are related. While CUCS repeats these assertions, it has not made them in formal discovery responses. It is therefore ORDERED to affirmatively state that it has no additional documents to produce with regard to Comdata's outstanding discovery requests or that it will not seek the

15

category of damages related to a particular response. CUCS is further ORDERED, to the extent it has not already done so, to amend its prior responses to Comdata's requests for production to identify by Bates number what documents are responsive to each request. CUCS shall make these responses by February 14, 2019.

CUCS is further ORDERED to show cause by February 28, 2019, why the Court should not award Comdata the reasonable expenses it incurred, including attorney's fees, in seeking the discovery at issue in this motion to compel.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge